STATE OF CONNECTICUT *v.* JOSEPH ONTRA

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 1—decision released July 24, 1979

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick J. Galluzzo,* assistant state's attorney, for the appellee (state).

PETERS, J. The defendant, Joseph Ontra, a lawyer, was convicted, after trial to the court, of two counts of larceny in the first degree by embezzlement in violation of General Statutes §§ 53a-119 (1) and 53a-122 (a) (2), and, as a result of his conviction, was summarily disbarred by the court. From the judgment subsequently rendered on his conviction and disbarment, the defendant has appealed.

At the trial, the defendant did not dispute the facts underlying his conviction for embezzlement, which arose out of his misappropriation of some $92,000 belonging to two savings banks. He maintained instead, and argues upon this appeal, that because of chronic alcoholism and drug ingestion, he could not be held criminally responsible for his conduct. The defendant offered evidence to establish that he was legally insane, under General Statutes § 53a-13, or that, in the alternative, his intoxication negated the specific intent which is an element essential to conviction of embezzlement.

The defendant has pursued three assignments of error on this appeal: (1) the sufficiency of the evidence to support his conviction; (2) the exclusion of certain evidence; and (3) the propriety of his summary disbarment. We will consider each of these issues separately.

I

The defendant's principal claim on this appeal is a challenge to the trial court's conclusion that upon all the evidence the defendant was guilty beyond a reasonable doubt of the crimes with which he had been charged. The defendant claims that the state failed to prove beyond a reasonable doubt that he was sane and that he acted with felonious intent.

At trial the defendant introduced lay and expert testimony concerning his chronic alcoholism and its effect on his capacity "to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law," the test established by General Statutes § 53a-13 for the defense of insanity. The state concedes that this evidence was sufficient to shift to the state the burden of proving the defend-

ant's sanity. *State* v. *Holmquist,* 173 Conn. 140, 148–49, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *State* v. *Dubina,* 164 Conn. 95, 100, 318 A.2d 95 (1972); *State* v. *Davis,* 158 Conn. 341, 355–56, 260 A.2d 587 (1969); *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81 (1968), cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428 (1969); see also General Statutes § 53a-12 (a).

In support of his insanity defense, the defendant produced the medical testimony of two psychiatrists, Edwin Lloyd Dawe and Malden Hauptfeld, who were involved in the defendant's hospitalization for chronic alcoholism at Hall-Brooke Hospital from January 12, 1976, until March 20, 1976. Both testified that the defendant's alcoholism was of long standing and that it had produced in the defendant a toxic brain syndrome with resultant impairment of judgment and intellectual functioning. Such alcoholism leads to periods of amnestic spells or blackouts, during which the person, despite apparent ability to function, does not appreciate what he is doing or later recollect what his activities have been. The finding of a toxic brain syndrome was confirmed by the written report of psychiatrist James M. Alexander who, at the request of the state, examined the defendant in May, 1976. Alexander's report stated: "I would date the onset of this toxic condition to 1969–1970 and am of the opinion that it has been acute and severe for approximately the last three years." Several lay witnesses also testified about the defendant's behavior, both during 1974 and 1975, up to the time in September 1975 at which he converted the $92,000, and thereafter. The defendant himself took the stand, not to contest the evidence of the conversion, but to describe his heavy

consumption of alcohol, valium, and dalmain. In his own defense he denied any recollection of the conversion and stated that he did not know why he had done it.

The state did not directly contest the fact of the defendant's alcoholism, but sought instead to establish that the defendant was not insane on the particular dates, September 16, 1975, and September 29, 1975, on which the conversions occurred. The defendant's witnesses, although their testimony purported to cover the defendant's state of mind during the last months of 1975, expressed no opinion as to the defendant's actual condition on these particular days. The state's witnesses, two lawyers who dealt with the defendant, testified to the defendant's demeanor at about the time of the admitted conversions, and indicated that the defendant appeared to be sober and to be able to handle complex financial and legal transactions. The defendant asserts that this rebuttal testimony was insufficient to satisfy the state's burden of proof, and that lay observations of the defendant's demeanor and actions are insufficient, especially in the absence of countervailing expert testimony, to justify rejection of the testimony of the defendant's medical experts. "Despite the quantity of the defendant's evidence tending to show insanity, the weight to be given the opinion evidence of expert witnesses, as is the case with other witnesses, is for the [trier of fact] to determine. *State* v. *Kenyon,* 134 Conn. 43, 49, 54 A.2d 585. The [trier of fact] could have disbelieved all or any portion of the defendant's evidence as to insanity. And although the state produced no expert testimony of its own to sustain the instant conviction, we have recently held that the state is under no requirement to do so, although it still has the

burden of proving sanity once the presumption is overcome. *State* v. *Davis,* 158 Conn. 341, 356, 260 A.2d 587." *State* v. *Vennard,* 159 Conn. 385, 404, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971) ; see *United States* v. *Levy,* 326 F. Sup. 1285, 1297 (D. Conn. 1971), aff'd, 449 F.2d 769 (2d Cir. 1971). Although the state's affirmative evidence was not overwhelming, it was sufficient to support the conclusion of the trial court that the state had established sanity beyond a reasonable doubt.

The defendant argues, in the alternative, that even if his alcoholism does not necessarily evidence lack of sanity, it nonetheless shows that he could not have acted with the specific felonious intent that is a requisite element of the crime of larceny. *State* v. *Marra,* 174 Conn. 338, 342, 387 A.2d 550 (1978). The defendant relies on General Statutes § 53a-7: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . ." See *State* v. *Crawford,* 172 Conn. 65, 69–70, 372 A.2d 154 (1976). This argument is, however, from an evidentiary point of view, subject to the same observations that pertain to the insanity defense. Although there was certainly considerable testimony of the defendant's excessive use of alcohol and of drugs, that evidence did not necessarily demonstrate intoxication at the time when the crimes were committed. If the trial court believed the state's witnesses, and gave credence to the defendant's own testimony on cross-examination about his extensive financial activities in the fall of 1975, the court could reasonably have concluded that the state had met its burden

of proof on this issue as well. In this factual posture, we need not explore whether, if intoxication at the relevant time had been established, different legal implications would attach to involuntary rather than to voluntary intoxication.

The state was obligated to prove every essential element of the crime including, upon challenge, the defendant's sanity. *Mullaney* v. *Wilbur,* 421 U.S. 684, 704, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Moye,* 177 Conn. 487, 493, 418 A.2d 870 (1979). Upon the evidence before the trial court, the court did not err in its conclusion that the defendant was guilty beyond a reasonable doubt.

## II

The defendant has assigned error to two exclusionary evidentiary rulings by the trial court. One ruling excluded certain evidence sought to be elicited by the defendant from one of his expert witnesses. The other excluded documentary evidence intended to show bias or interest on the part of one of the state's witnesses. In both instances, timely exceptions were taken. We find neither ruling to have been in error.

The first ruling occurred during the testimony of Edwin Lloyd Dawe, the psychiatrist who, in January 1976, hospitalized the defendant pursuant to a diagnosis of chronic alcoholism. Dawe was asked, without objection, about the effect on a hypothetical alcoholic of the consumption of quantities of valium or other drugs, in addition to a quart of liquor a day. He replied, again without objection, that the effect

would be additive and synergistic. Thereafter, the state successfully objected to the defendant's effort to have Dawe explain the meaning of the term "synergistic," on the ground that the defense had not adequately established the defendant's use of both drugs and alcohol. Exploration of hypothetical questions based on facts not yet in evidence must rest in the sound discretion of the trial court. *Healy* v. *White,* 173 Conn. 438, 446–47, 378 A.2d 540 (1977); *Duley* v. *Plourde,* 170 Conn. 482, 488, 365 A.2d 1148 (1976); *Schwartz* v. *Westport,* 170 Conn. 223, 225, 365 A.2d 1151 (1976); *Nally* v. *Charbonneau,* 169 Conn. 50, 56, 362 A.2d 494 (1975). It is difficult to see how this discretion can be deemed to have been abused when the defendant did not press the matter, after having succeeded in making his substantive point, and losing only on a question of definition.

The second evidentiary ruling attacked on this appeal arose during the cross-examination of one of the state's rebuttal witnesses, Attorney Douglas A. Strauss. The defense was permitted to elicit testimony that the witness had an interest in certain other civil and criminal litigation against the defendant and that the witness had decided to complain to the bar association concerning certain alleged misrepresentations by A. Reynolds Gordon, an attorney acting as the defendant's counsel in the civil litigation. The defense attempted to establish that the witness's complaint was motivated by an earlier complaint against the witness filed by Gordon with the banking commission. Upon the witness's denial that he had been so motivated, the defense offered a letter purportedly drafted by the witness concerning Gordon's complaint. The trial court sustained the state's objection that the letter was too collateral since it went not to the existence of a dispute

between the witness and Gordon, which had already been established, but rather to the merits of the dispute, which were irrelevant.

The trial court in no way limited the opportunity of the defense to cross-examine the witness in order to show that he was interested or biased. In fact, in response to questioning by the defense, the witness admitted his interest. Once a witness has testified to his own bias, he cannot be impeached by contradicting that testimony as to a collateral matter; *State* v. *Wilson,* 158 Conn. 321, 324, 260 A.2d 571 (1969); *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724 (1964); that is, as to an issue that is neither relevant nor material to the case apart from its tendency to contradict the witness. *State* v. *Saia,* 172 Conn. 37, 45–46, 372 A.2d 144 (1976); *State* v. *Villafane,* 171 Conn. 644, 672, 372 A.2d 82 (1976); *State* v. *Crane,* 169 Conn. 242, 245–46, 362 A.2d 843 (1975). The scope and extent of cross-examination, and the determination of what matters are relevant and what are collateral, rest within the sound discretion of the trial court. *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730 (1978); *State* v. *Reed,* 174 Conn. 287, 300, 386 A.2d 243 (1978); *State* v. *Clemons,* 168 Conn. 395, 404, 363 A.2d 33 (1975). There was no abuse of that discretion here.

## III

The defendant's final claim of error relates to his summary disbarment by the trial court as a result of his conviction of embezzlement. Subsequent to the trial of the defendant's case we held, in *State* v. *Tedesco,* 175 Conn. 279, 294, 397 A.2d 1352 (1978), that Practice Book, 1963, § 20[1] authorized summary

---

[1] The comparable section in the 1978 Practice Book is § 30; but compare General Statutes § 51-89a.

disbarment only for misconduct occurring in the presence of the trial court. Under *Tedesco,* a conviction per se cannot be an act of misconduct for the purposes of summary disbarment, since the conviction normally evidences misconduct that has occurred elsewhere rather than misconduct in the actual presence of the court.

The state argues that it is improper for us to consider this assignment of error since the defendant did not in timely fashion contest the propriety of his disbarment before the trial court. We agree with the defendant that the issue of summary disbarment sufficiently touches an issue of fundamental constitutional right; cf. *In re Ruffalo,* 390 U.S. 544, 550–52, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968); so that the intervention of the *Tedesco* case falls within the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973). This claim is rightfully here.

On the merits, the defendant's summary disbarment cannot be sustained. This case is governed by *Tedesco.* It should, however, be noted that our disposition of the court's summary procedure in no way forecloses such other more appropriate disbarment proceedings as may be warranted.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.