STATE OF CONNECTICUT *v.* LONNIE SMITH

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

---

Argued April 3—decision released July 28, 1981

*Francis T. Mandanici,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett*

and *Herbert J. Bundock,* public defenders, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

BOGDANSKI, C. J. This case requires us to spell out several implications of the relationship between less culpable mental states and included offenses.

A two-count information originally charged the defendant with manslaughter in the first degree, General Statutes § 53a-55 (a) (1),[1] and assault in the first degree, General Statutes § 53a-59 (a) (1).[2] Prior to trial the state filed a substitute information charging the defendant with manslaughter in the first degree, General Statutes § 53a-55 (a) (3),[3] and assault in the first degree, General Statutes § 53a-59 (a) (3),[4] thus charging, as to both offenses, reckless

---

[1] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] At the relevant times General Statutes § 53a-59 provided: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[4] At the relevant time § 53a-59 provided: "(a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

rather than intentional conduct. After listening to the testimony and the instructions, and concluding their deliberations, the six-person jury found the defendant not guilty of manslaughter in the first degree and not guilty of assault in the first degree, but guilty of the respective lesser included offenses, manslaughter in the second degree, General Statutes § 53a-56 (a) (1),[5] and assault in the second degree, § 53a-60 (a) (3).[6] This appeal follows the trial court's denial of the defendant's motions for judgment of acquittal and for a new trial. The defendant contends that the trial court erred: (1) in ruling that sufficient evidence supported the jury's verdict; (2) in refusing to give the jury two instructions which the defendant had requested that they receive; (3) in allowing the state to proceed on a substitute information; (4) in denying the defendant's motion to suppress a knife and certain statements made by him; and (5) in admitting into evidence an autopsy picture.

From the evidence presented at trial, the jury reasonably could have found the following facts. In September, 1978, Irene Curmon was living with the defendant on the first floor of a two-story tenement in Bridgeport. In the past, they had fought and argued and she had once come at him with a knife. Rosemary Mackin Nichols lived on the second floor. She had known the defendant for five or six years. At approximately 2 p.m. on September 11, 1978, the

[5] "[General Statutes] Sec. 53a-56. MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[6] "[General Statutes] Sec. 53a-60. ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

defendant was sober. Neither Nichols nor Curmon had fought with him that day. The defendant went to the second floor front porch and stayed there talking with Nichols, who had her baby son with her. While talking with Nichols, the defendant drank some whiskey and beer which he had purchased earlier that day at a liquor store. Curmon went up to the porch around an hour after the defendant. She was intoxicated and could hardly walk or stand. Curmon stayed for about five minutes and then left with the defendant. About twenty minutes later, Nichols heard Curmon, who had been arguing with the defendant, scream "Rosemary, James." Nichols picked up her son and went to the hallway, where she saw the defendant standing over Curmon, who was lying on the floor, bleeding. As soon as Nichols reached Curmon and started to bend down, the defendant wheeled around and stabbed Nichols' side. Immediately after he stabbed her, he said "all you women are alike." Because she did not know if she could get out the back door, Nichols backed up against the rear wall and asked the defendant not to hurt her baby. The defendant, who had followed her as she backed away, replied "I'm not going to hurt your baby, I'm going to hurt you." Nichols got past the defendant, without further incident, and went out the front door. The defendant followed her outside. Nichols went to the house next door and asked the people to call an ambulance. She then walked to the telephone on the corner and asked the police to send an ambulance. Before the police or the ambulance arrived, Trinidad Walker, who was driving by, pulled up and took Nichols and her baby to the hospital. As Nichols got into Walker's car the defendant stood nearby holding a five-inch

kitchen knife from which blood dripped. Before the police arrived, the defendant returned to his apartment, washed his hands, washed the knife, placed it inside a box with a set of other knives, placed the box in a cupboard, and left the apartment, closing the door behind him.

At about 5 p.m. patrolmen Jeffrey Brown and Henry Austin were assigned to investigate the stabbing reports. When the police arrived at the building where the stabbings had occurred, the defendant was on the first floor front porch talking to some men. The police looked for the victim and found Curmon lying in the second floor hallway. She showed no sign of life. Austin checked her pulse and felt nothing. The officers assisted the ambulance crew in placing her on a stretcher and putting her into an ambulance. After the officers went back to the second floor to look for evidence, the defendant came up to Austin and said that he wanted to speak to him. The defendant and the officers went out to the second floor porch and the defendant said he was responsible for the stabbing. Thereupon, Austin read the defendant his *Miranda* rights and asked him if he understood them. The defendant replied that he understood. Austin then arrested the defendant and escorted him to the police car. Sometime before the officers placed the defendant in the car they had handcuffed him. In the car the officers asked him where he had left the knife he had used. At first he didn't tell them, but after the officers told him that it would be much better for him to cooperate, he told them that the knife was in his apartment and told them where the keys were. The defendant had no difficulty describing which of the four or five keys on his keychain unlocked the apartment door. Once inside the apartment, he told the officers that

he had washed the knife and placed it back in a set of knives in the kitchen cabinet. The officers found the knife in the condition and location that the defendant had described. The defendant said that he had done it, that he knew he would have to do some time, and that he and Curmon had been arguing, drinking, and taking pills. After they checked on the assault victim at the hospital, the officers took the defendant to the police station, where detective Michael DeCarlo gave the defendant a waiver of rights form. The defendant read the form and handed it back. One of the officers then read the waiver form aloud and gave it to the defendant, who signed it. Sometime later DeCarlo asked if the defendant wanted to tell him what had happened. The defendant responded by admitting to DeCarlo that he had done it. The defendant said that he had argued with Curmon and had accidentally cut Nichols with his knife when she had come between them. He said that he couldn't recall where he had gotten the knife but he recalled taking it and washing it off afterwards. During the interview with DeCarlo the defendant cried and was remorseful. Later the defendant talked with his aunt and his cousin at the police station. He told them that he had done it, that he had not meant to accuse Nichols, and that he knew he would have to go to jail, but that it was just an unfortunate incident. At some time, the defendant told DeCarlo that Curmon always carried a knife or something.

## I

The defendant moved for a judgment of acquittal, at the close of both the state's case and all the evidence and also after the jury returned their verdict of guilty. The motions argued (1) that the state

failed to disprove beyond a reasonable doubt a defense of mental disease or defect; (2) that the state failed to disprove beyond a reasonable doubt a defense of intoxication;[7] and (3) that the defendant's conduct so clearly manifested an intent to cause Curmon's death and to injure Nichols seriously that it excluded the possibility that a reasonable jury could find that he acted recklessly[8] with regard to those results.

The defendant asserts that the court erred in denying these motions. We will discuss the first two assertions together. The third, we will discuss in section IIA together with the defendant's request for an instruction on intent. The defendant does not contest the conclusion that he caused Curmon's death and seriously injured Nichols by stabbing

[7] Intoxication is not a defense to a criminal charge. General Statutes § 53a-7. A defendant, however, may offer evidence of intoxication whenever it is relevant to negate an element of the crime charged. Ibid. The defendant argues that evidence of intoxication was relevant to negate recklessness, an element of both crimes of which the jury found the defendant guilty. The defendant does not claim that evidence of intoxication was improperly excluded as irrelevant; indeed, such evidence was admitted.

In *State* v. *Turcio*, 178 Conn. 116, 132, 422 A.2d 749 (1979), we said: "In order to prove intent . . . the prosecution had the burden of disproving intoxication." That burden, however, is not an additional distinct requirement beyond that which the state faces in every prosecution for an offense the commission of which requires a particular mental state. If the cumulative effect of all the evidence, including evidence of intoxication, justifies finding the particular mental state beyond a reasonable doubt, the jury's verdict precludes a reversal for insufficient evidence of that mental state.

[8] "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (13).

them. His first two claims allege that the evidence so clearly showed such an impairment of his mental processes that a reasonable jury could not find him guilty beyond a reasonable doubt of a crime the commission of which requires the offender to act recklessly.

"We have repeatedly stated the test which this court employs to determine whether the evidence is sufficient to sustain a verdict: ' "[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." ' *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980), quoting *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980) ; *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979) ; *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). 'In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict.' *State* v. *Jackson,* supra, 262; see *State* v. *Nemeth,* supra; *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977). Each essential element of the crime charged must be established by proof beyond a reasonable doubt, ' "and although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." ' *State* v. *Gaynor,* supra, 503; *State* v. *Festo,* supra, 259." *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

The testimony of Nichols and other witnesses indicated that the defendant had drunk a quantity

of liquor shortly before the time of the stabbings. There was also testimony that he had taken some valium. James Alexander, a psychiatrist, testified that the defendant is a severe chronic alcoholic and that alcohol kills brain cells. Other witnesses testified that they had seen the defendant drunk on many occasions. The defendant had been an inpatient at Fairfield Hills Hospital one month before the stabbings. He was diagnosed as suffering from alcoholism and habitual excessive drinking. He testified that when he was discharged from Fairfield Hills Hospital, he went to Blue Hills Hospital, which he left nineteen days before the stabbings. Alexander testified that a person who has developed physical or psychological dependency on alcohol has relatively little control over his illness and at certain times and under certain circumstances such a person has virtually no control over his illness without appropriate detoxification and supportive services. John Boitano, who has a Ph.D. in psychology, testified that when a chronic alcoholic's neural tissue cells overreact, and create the basis for feelings of nausea, cramps tremors, hallucinations, and delirium tremens, the alcoholic cannot resist the physical compulsion to drink.

Alexander concluded, based upon the defendant's history, his personality, a review of his Fairfield Hills Hospital records, his statements that he had consumed at least a six-pack of beer, half of a pint of bourbon, and six to eight blue valium[9] on the day in question, and his narration of the incident in question, that due to a toxic brain syndrome which was superimposed on the condition of chronic alcoholism, the defendant lacked the substantial capa-

[9] Alexander testified that each blue valium tablet contains ten milligrams of valium.

city to appreciate the wrongfulness of his conduct and to conform his conduct to the precepts of law. George Kelly, M.D., an expert chosen by the state to examine the defendant, concluded, in a letter that the state read to the jury, that at the time of the crime the defendant probably was not able to appreciate the wrongfulness of his act and may not have been able to conform his conduct to the requirements of the law. In response to a question, which hypothesized the consumption of alcohol in a larger quantity than that upon which Alexander had in part based his opinion, Boitano answered that a person who, within eight hours, had consumed a six pack of beer, a pint of whiskey and sixty to seventy milligrams of valium would lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. The expert witnesses also testified that in familiar non-stressful situations an alcoholic can hide the outward symptoms of intoxication.

The defendant argues that the evidence of mental disease or defect would compel any reasonable juror to reasonably doubt the defendant's sanity at the time of the stabbings and that the evidence of involuntary intoxication so negated recklessness that a reasonable juror could not find that the state had proven beyond a reasonable doubt the mental element of the offenses for which the jury convicted the defendant.

The defendant's argument erroneously assumes that the jury fully accepted the evidence which supports the defendant's assertion of involuntary intoxication and insanity. Despite the quantity of evidence tending to show insanity or involuntary intoxication, the weight to be given both the opinion

evidence of expert witnesses and the lay evidence of consumption is for the jury to determine. *State* v. *Ontra,* 178 Conn. 480, 484, 423 A.2d 134 (1979). The jury could have disbelieved all or any portion of the evidence tending to prove insanity or involuntary intoxication or could have construed such evidence in ways that depart from the parties' assertions. *State* v. *Ontra,* supra; *Toffolon* v. *Avon,* 173 Conn. 525, 530, 378 A.2d 580 (1977). Although not overwhelming and at times inconsistent, the circumstantial evidence provided by the testimony of lay witnesses who had observed the defendant's behavior, under what the jury may have found to have been unfamiliar and stressful circumstances, sufficed to support the jury's conclusion that the state had established the defendant's sanity beyond a reasonable doubt. All the expert testimony depended, at least in part, upon the defendant's version of the quantity of drugs and alcohol he had consumed on the day of the stabbings. The testimony of the lay witnesses allowed the jury to conclude that the defendant had consumed less alcohol and valium than the amounts upon which the experts based their opinions.

The record contains sufficient evidence for a reasonable jury to have concluded that the defendant was not intoxicated at the time he stabbed Curmon and Nichols. Even if the jury reached a contrary conclusion, they had sufficient evidence to conclude that the defendant's intoxication was self-induced. Evidence of self-induced intoxication would not have negated recklessness. General Statutes § 53a-7.[10]

---

[10] "[General Statutes] Sec. 53a-7. EFFECT OF INTOXICATION. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant

## II

### A

The court did not err when it refused the defendant's request to instruct the jury that if they found that he intentionally caused Curmon's death and Nichols' serious physical injury then they should find him not guilty of offenses the commission of which requires that the offender act recklessly with respect to such results. Because the same reasoning disposes of the defendant's arguments on this instruction and on his assertion that his conduct so clearly manifested an intent to cause Curmon's death and to injure Nichols seriously that it excluded the possibility that a reasonable jury could find that he acted recklessly with regard to those results, we will consider both claims of error together.

Evidence that the defendant acted with intent may support a jury finding that he acted recklessly. *State* v. *Giguere,* 184 Conn. 400, 403–404, 439 A.2d 1024 (1981). *State* v. *Rodriguez,* 180 Conn. 382, 404–405, 429 A.2d 919 (1980), established that in prosecutions for homicides despite the differences between acting intentionally, acting recklessly, and acting with criminal negligence, we will deem the more culpable of those mental states to include the less culpable when both apply to actions with respect to an

---

may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

76

identical result or circumstance.[11]  Therefore the defendant could not prevent his conviction by preserving a reasonable doubt that he intentionally rather than recklessly killed Curmon and seriously injured Nichols.  See Model Penal Code, § 2.02 (5), comment, p. 129 (tentative draft No. 4, 1955) (applying the analysis which we adopted in *Rodriguez* to all offenses).

## B

The court erred when it refused the defendant's request to instruct the jury that if they did not find the defendant guilty of the crimes charged or of certain lesser included offenses they could consider finding him guilty of the lesser included offenses of criminally negligent homicide; General Statutes § 53a-58;[12] under the first count, and assault in the third degree; General Statutes § 53a-61 (a) (3);[13] under the second count.

A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of

[11] The defendant based his argument on a quotation from *State* v. *Ruiz*, 171 Conn. 264, 368 A.2d 222 (1976). After *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980), *Ruiz* no longer controls the issue.

[12] "[General Statutes] Sec. 53a-58. CRIMINALLY NEGLIGENT HOMICIDE: CLASS A MISDEMEANOR. (a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

[13] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser. *State* v. *Tinsley,* 181 Conn. 388, 396–97, 435 A.2d 1002 (1980),[14] cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). "For purposes of the second condition . . . an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." *State* v. *Rodriguez,* supra, 407. We apply to both the manslaughter and the assault counts the same analysis we used in *Rodriguez.* We conclude that the offenses concerning which the defendant requested the court to instruct the jury are lesser included offenses of the crimes charged in the information.

The state does not dispute that the evidence in this case satisfies the third condition. The unresolved question posed by this claim of error asks whether the evidence of the elements that differentiate the included offenses from the offenses charged was sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the offenses charged but guilty of their respective included offenses. We must answer in the affirmative if viewing the evidence in the light most favorable to the defendant; *People* v. *Shuman,* 37 N.Y.2d

---

[14] The fourth condition is stated more precisely above than it was in *State* v. *Tinsley,* 181 Conn. 388, 397, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981).

78

302, 304, 333 N.E.2d 363 (1975); reasonable minds could differ upon the the existence or nonexistence of the element that distinguishes the inclusive from the included offense. *State* v. *Morin,* 180 Conn. 599, 610–11, 430 A.2d 1297 (1980) (*Healey, J.,* dissenting). Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence. *Stevenson* v. *United States,* 162 U.S. 313, 314, 16 S. Ct. 839, 40 L. Ed. 980 (1896); see *Keeble* v. *United States,* 412 U.S. 205, 212–13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973); *State* v. *Rodriguez,* supra, 404.

On the basis of the evidence presented, a reasonable juror could have believed that for some reason other than insanity or self-induced intoxication, the defendant failed to perceive a substantial and unjustifiable risk that his acts would cause the death of Curmon and serious physical injury to Nichols and thus did not consciously disregard that risk. Therefore the court erred by not instructing the jury to consider the lesser included offenses of criminally negligent homicide; General Statutes § 53a-58; in the first count and assault in the third degree; General Statutes § 53a-61 (a) (3); in the second count.[15] Nothing in the record before us provides any basis for finding that the defendant in any way disputed the abundant evidence that he caused Curmon's death. Therefore the court did not err in refusing

[15] Assault in the third degree; General Statutes § 53a-61 (a) (3); and assault in the second degree; General Statutes § 53a-60 (a) (3); differ not only in the mental state each requires but also because § 53a-60 (a) (3) requires a serious physical injury whereas § 53a-61 (a) (3) requires only some physical injury. The seriousness of the physical injury, however, has no significance for the fourth part of our test because no offense links the less culpable mental state, criminal negligence, with the more serious result, serious physical injury. Thus we need not decide whether any evidence would justify finding that Nichols' physical injury was not serious.

to instruct the jury that they could consider assault in the third degree; General Statutes § 53a-61 (a) (3); in their deliberations upon the first count.

We must reverse the defendant's conviction because the court erred in failing to instruct the jury on the lesser included offenses of criminally negligent homicide in the first count and assault in the third degree in the second count. Because sufficient evidence supported the defendant's conviction, a new trial on the charges for which he was convicted and their included offenses will not constitute double jeopardy. *Greene* v. *Massey,* 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978); *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). We consider the defendant's remaining claims of error because they may arise upon a retrial.

## III

The court did not err in denying the defendant's motions to dismiss and to strike the substitute information. The defendant asserts that the manner in which the state changed the charges against him violated his constitutional rights to due process, a fair trial, effective assistance of counsel, and freedom from compelled self-incrimination.[16] Both

---

[16] The defendant cites the fifth, sixth, and fourteenth amendments of the United States constitution and article first, §§ 8 and 9 of the Connecticut constitution.

"No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V.

"In all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusation; . . . and to have the assistance of counsel for his defense." U.S. Const., amend. VI.

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

counts of the original information charged the defendant with intentional conduct. While so charged, the defendant gave notice that he might rely on the defense of mental disease or defect and present expert testimony concerning his mental state. The notice stated explicity that it did not make any admission or commit the defendant to that defense. Practice Book, 1963, § 2169 (now § 758)[17] and § 2170 (now § 759)[18] required such notice.

any State deprive any person of life, liberty or property, without due process of law." U.S. Const., amend. XIV § 1.

"In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation .... No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law." Conn. Const., art. I § 8.

"No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const., art. I § 9.

[17] "[Practice Book] Sec. 758. — —NOTICE BY DEFENDANT. If a defendant intends to rely upon the defense of mental disease or defect at the time of the alleged crime, he shall, within the time provided for the filing of pretrial motions pursuant to Sec. 811 or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this section, mental disease or defect may not be raised as a defense. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

[18] "[Practice Book] Sec. 759. — —MENTAL DISEASE OR DEFECT INCONSISTENT WITH THE MENTAL ELEMENT REQUIRED FOR THE OFFENSE CHARGED. If a defendant intends to introduce expert testimony relating to a mental disease or defect, or another condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrail motions or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. He shall also furnish the prosecuting authority with copies of reports of physical or mental examinations of the defendant made in connection with the offense charged, within a reasonable time after the examination. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

Before the defendant made the required disclosure of a report of a mental examination conducted by his chosen expert, the defendant moved that the state's use of any of his statements made in connection with his alleged intoxication and mental disease or defect be limited to rebuttal of those alleged conditions. He also moved to so limit the use of any report made in those connections.

The court ordered that the state could not use the defense expert as its own witness or introduce his report in its case in chief. After receiving the defendant's expert's report, the state sought an order requiring the defendant to submit to an examination by its expert. The court granted such an order despite the defendant's objection that such an order would compel him to incriminate himself. Under the authority of that order, Kelly examined the defendant on behalf of the state. Seven days after Kelly made his report, the state, motivated in part by the reports of the various psychiatrists, which stressed the defendant's long history of alcohol abuse, filed a substitute information which, in addition to the offenses charged in the original information, charged the defendant with recklessly causing the results which the original information had charged him with causing intentionally. The substitute information sought to take advantage of General Statutes § 53a-7, which to a large extent renders self-induced intoxication irrelevant to reckless behavior. The defendant objected then and objects now that the state violated both the defendant's right against self-incrimination and Practice Book, 1978, § 772 (formerly Practice

82

Book, 1963, § 2183)[19] by even partially basing its
decision to change the information upon the psy-
chiatric reports. The court denied the defendant's
motion to dismiss the substitute information but
ordered the state on each count to elect between
charging reckless and intentional conduct.

The state may not compel a person to provide
testimonial evidence which may tend to incriminate
him. As a corollary, in a criminal proceeding
against a person whom the state has compelled to
provide such evidence, the government may not use
that evidence or its fruits. *Estelle* v. *Smith*, 451
U.S. 454, 462–63, 101 S. Ct. 1866, 68 L. Ed. 2d 359
(1981); *Murphy* v. *Waterfront Commission of New
York*, 378 U.S. 52, 57 n.6, 84 S. Ct. 1594, 12 L. Ed.
2d 678 (1964); *People* v. *Rucker*, 26 Cal. 3d 368, 605
P.2d 843 (1980).

Required disclosure of alibi and insanity defenses
and the required submission of a defendant to a
pretrial mental examination by state experts are
constitutional if the purpose is to eliminate midtrial
surprises and the inevitable state requests for a
continuance for more time to prepare rebuttal to
those defenses. See *Williams* v. *Florida*, 399 U.S.
78, 85, 86, 90 S. Ct. 1893, 26 L. Ed 2d 446 (1970). To
protect a defendant's right to refuse to incriminate
himself, the state may use information obtained
through such disclosures and examinations only for
the cross-examination or rebuttal of defense testi-
mony. Practice Book § 772. Furthermore, in any
criminal proceeding, Practice Book § 760 bars from

[19] "Information obtained by the prosecuting authority pursuant to
Sec. 756 shall be used only for the cross-examination or rebuttal of
defense testimony." Practice Book § 772. Sections 758 and 759 are
subsumed under § 756; therefore § 772 applies to disclosures required
by them.

admission into evidence on the issue of guilt statements made by the defendant in the course of any examination related to a defense of mental disease or defect.

Judicial review of an asserted invasion of the protection against compelled self-incrimination must focus on whether the state (1) actually compelled the claimant to disclose (2) testimonial communications (3) which tended to incriminate him. The present case raises difficult questions concerning whether the state has actually compelled the defendant to disclose testimonial communications. See *Estelle* v. *Smith,* supra, 463–66; *People* v. *Rucker,* supra; *People* v. *Rosenthal,* 617 P.2d 551 (Colo. 1980); *People* v. *English,* 31 Ill. 2d 301, 201 N.E.2d 455 (1964). We do not address those questions because our examination of the briefs and appendices reveals that none of the information that the defendant alleges that the state obtained as a result of the disclosure and examination tends to incriminate the defendant,[20] nor did the state use or attempt to use that information to incriminate him. In fact, Kelly's report supported the defendant's insanity defense.

The defendant argues that self-incrimination occurred when the state, on the basis of the defendant's possibly impaired mental state, which it learned about in part from the disclosure of both his defense of mental disease or defect and the

---

[20] The defendant asserts that the notice of mental disease or defect, the examination by Kelly, and the report of the defense expert incriminated him. The defendant has not included in his brief and appendix any excerpt from his expert's report. We reprint his notice and Kelly's report.

"NOTICE OF MENTAL DISEASE OR DEFECT

Pursuant to Sections 2169 and 2170 of the Connecticut Practice Book, the Defendant hereby gives notice that he might rely on the

84

psychiatric reports, decided to add to each count an alternative charge that varied from the original charge only by specifying that the defendant acted recklessly rather than with intent. We have previously concluded that a less culpable mental state does not render different what would otherwise be an included offense. Therefore the change in charges could not tend to incriminate the defendant because it neither resulted in the defendant's being charged with a different crime nor led to evidence of his guilt. The fact that the prosecutor can more

defense of mental disease or defect and/or present expert testimony concerning his mental state.

The Defendant by giving this notice is not making any admissions or committing himself to said defense.

Filed October 3, 1978.          THE DEFENDANT
              By:   FRANCIS T. MANDANICI
                Asst. Public Defender"

"[REPORT OF DR. KELLY]

April 3, 1979

Mr. Donald Browne
State's Attorney's Office
County Court House
1061 Main Street
Bridgeport, Connecticut 06604

RE: LONNIE SMITH
DOCKET # 26, 133

Dear Mr. Browne:

Pursuant to Section 53A-47 of the Connecticut General Statutes, I have been instructed to examine Mr. Lonnie Smith by Judge Robert Testo. The examination was conducted at the Bridgeport Correctional Center on March 16, 1979.

Mr. Smith was found to be alert and cooperative during the examination. He claimed he did not recall the events of the day which lead to his being charged with Manslaughter. He related in great detail the events of the day prior to his taking Valium and drinking alcohol. He claimed that he has no recollection of the events beyond this point. According to what people have told him, he stabbed two women friends while they were all drinking which resulted in the death of one of them. While he maintains that he

easily prove an included offense and that the legislature has chosen to authorize the same penalty for the included as for the inclusive offense does not amount to legal prejudice to the defendant.[21]

The state's use of information it had obtained pursuant to Practice Book §756 for a purpose other than cross-examination or rebuttal of defense testimony violated Practice Book § 772. Because the state had a sufficient independent basis to charge reckless offenses and could have changed the information at any time, including at trial, the violation did not require the court to strike or dismiss the information.

## VI

The court did not err by denying the defendant's motion to suppress the knife and the statements he made in response to custodial interrogation after

was told of a confession at the time of the crime, he has no recollection of a confession now. Mr. Smith states that he has been drinking heavily since age 19. He has described periods of blackouts before and definite symptoms of alcohol withdrawal at times.

There is no other evidence at this time of another psychiatric disorder. Mr. Smith does not appear to be depressed nor psychotic. His speech was relevant, coherent, and spontaneous. There was no evidence of hallucinations, delusions, or suicidal ideas. There was no evidence of a thought-disorder. He was not suspicious nor guarded.

His cognitive ability was normal and his intelligence was judged to be approximately average.

It is my medical impression that Mr. Smith may have indeed committed the crime of which he is accused while under the influence of alcohol and drugs. Therefore, at the time of the commission of the crime, he was probably not able to appreciate the wrongfulness of his act and may not have been able to conform his conduct to the requirements of the law.

Thank you for the opportunity of examining this patient.

Sincerely,

GEORGE P. KELLY, M.D."

[21] The legislature may authorize the same punishment for an offense and its included offenses. *People* v. *Trujillo,* 184 Colo. 387, 524 P.2d 1379 (1974).

the police informed him of his *Miranda* rights. The ruling on the motion to suppress turned on factual issues. The question whether a consent to search was made voluntarily is a question of fact to be determined from the totality of the circumstances. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 232–33, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977). So far as the statements of the defendant are concerned, the prosecution bears the burden of proving that the defendant "knowingly and intelligently waived his privilege against self-incrimination." *Miranda* v. *Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); see *Tague* v. *Louisiana,* 444 U.S. 469, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980). "This burden need only be proved by a preponderance of the evidence, and not by proof beyond a reasonable doubt; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356 [cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607] (1980) . . . ." *State* v. *Wilson,* 183 Conn. 280, 287, 439 A.2d 330 (1981). The waiver of a constitutional right is effective only if, under all the circumstances, it was knowingly, voluntarily and intelligently given. *State* v. *Marion,* 175 Conn. 211, 218, 397 A.2d 533 (1978); *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978).

" '[T]he use of drugs or the ingestion of alcoholic beverages does not in and of itself render a subsequent admission inadmissible. *People* v. *Pawlicke,* 62 Ill. App. 3d 791, 796, 379 N.E.2d 798 (1978); see *United States* v. *Brown,* 535 F.2d 424, 427 (8th Cir. 1976); *State* v. *Peterson,* 366 A.2d 525 (Me. 1976).' " *State* v. *Stankowski,* supra, 134. It is, however, one factor to be considered in determining both the

voluntariness of a consent to a search and whether a defendant knowingly, voluntarily, and intelligently waived his rights to remain silent and have counsel present during custodial interrogation. See *State* v. *Stankowski,* supra; *Commonwealth* v. *Meehan,* 377 Mass. 552, 387 N.E.2d 527 (1979), cert. dismissed, 445 U.S. 39, 100 S. Ct. 1092, 63 L. Ed. 2d 185 (1980). A trial court may find that extreme intoxication rendered a defendant incapable of voluntarily consenting to a search or of effectively waiving his constitutional rights. *United States* v. *Johnson,* 563 F.2d 936, 939 (8th Cir. 1977), cert. denied, 434 U.S. 1021, 98 S. Ct. 746, 54 L. Ed. 2d 768 (1978); *Gladden* v. *Unsworth,* 396 F.2d 373, 380–81 (9th Cir. 1968); *Logner* v. *North Carolina,* 260 F. Sup. 970, 976–77 (M.D.N.C. 1966), cert. denied, 393 U.S. 857, 89 S. Ct. 110, 21 L. Ed. 2d 126 (1968). The record here, however, contains sufficient evidence for the trial court to have found that, despite claims to the contrary, the defendant retained and exercised his ability to consent voluntarily to a search and to waive his constitutional rights.

## V

The trial court did not err in admitting into evidence, over the defendant's objection, an autopsy picture of Curmon. Prior to the admission of the picture the defendant offered to admit certain facts which the picture might tend to prove. He argued that the picture was cumulative because an expert witness had already testified about the autopsy. He also argued that the picture was highly prejudicial and inflammatory and that those considerations outweighed any relevancy the picture might have. The court admitted the picture to help the jury determine whether the stabbing was reckless, an issue which the defendant had not offered to admit.

"It cannot be doubted that to offer wholly irrelevant evidence of a gruesome character merely to inflame the members of the jury would be indefensible and intolerable. 'On the other hand the prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce.'" *State* v. *Piskorski*, 177 Conn. 677, 701–702, 419 A.2d 866 (1979).

We cannot conclude that the trial court abused its discretion in admitting this black and white autopsy photograph of the deceased. See *State* v. *Bember*, 183 Conn. 394, 408, 439 A.2d 387 (1981); *State* v. *Piskorski*, supra.

There is error, judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.