STATE OF CONNECTICUT *v.* GARY L. HANSON
(3928)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued March 31—decision released August 11, 1987

*Vincent J. Giedraitis,* public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Donald B. Caldwell,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals, after a trial to the court, from his conviction of arson in the first degree,[1]

---

[1] The defendant was found not guilty of two counts of attempted murder in violation of General Statutes §§ 53a-54a and 53a-49.

in violation of General Statutes § 53a-111.[2] The defendant claims that the court erred (1) in the burden of proof used, (2) in the findings made, and (3) in the conclusions drawn as to the affirmative defense provided by General Statutes § 53a-13.[3] The defendant also claims error in the court's determination that it had no discretion to release the defendant from incarceration pursuant to General Statutes § 17-251.

The trial court rendered a lengthy and detailed decision in open court at the conclusion of the trial, stating its factual findings and legal conclusions. The finding of guilty was rendered by the court on September 11, 1984. The defendant was examined prior to sentencing to determine his mental condition in accordance with General Statutes § 17-244.[4] The court sentenced

---

[2] General Statutes § 53a-111 provides in pertinent part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[3] General Statutes § 53a-13 provides: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription.

"(c) As used in this section, the terms mental disease or defect do not include (1) an abnormality manifested only by repeated criminal or otherwise antisocial conduct or (2) pathological or compulsive gambling."

[4] General Statutes § 17-244 (a) provides, in pertinent part: "[A]ny court prior to sentencing a person convicted of an offense for which the penalty

the defendant on January 9, 1985, to a term of fifteen years, but, in light of the report on his mental condition, ordered that the defendant be committed to the Whiting Forensic Institute for treatment. General Statutes § 17-245.[5] On January 7, 1986, the court held a hearing after a reexamination of the defendant as provided in General Statutes § 17-250,[6] and transferred him to the custody of the commissioner of correction to serve the remainder of his sentence. General Statutes § 17-251.[7]

may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request . . . order the commissioner [of mental health] to conduct an examination of the convicted defendant by qualified personnel of the [Whiting Forensic] institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction."

[5] General Statutes § 17-245 (a) provides in pertinent part: "If the report [pursuant to § 17-244] recommends sentencing in accordance with the conviction and confinement in the institute for custody, care and treatment, then during the period between the submission of the report and the disposition of the defendant by the court such defendant shall remain at the institute and may receive such custody, care and treatment as is consistent with his medical needs."

Subsection (c) of that statute provides in part: "If the court finds such person to be mentally ill and dangerous to himself or others and to require custody, care and treatment at the institute, it shall sentence him in accordance with the conviction and order confinement in the institute for custody, care and treatment provided no court may order such confinement if the report does not recommend confinement at the institute. The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence."

[6] General Statutes § 17-250 provides that an institutionalized defendant be reexamined at least once every six months. That examination shall ascertain whether the patient is mentally ill and in need of custody, care and treatment at the institute and the record of the examination may include a recommendation for transfer of the patient or a change in confinement status.

[7] General Statutes § 17-251 provides: "(a) As soon as is practicable the director [of Whiting Forensic Institute] shall act upon the examination

The defendant's first claim of error is that the court erred in applying a higher standard of proof than the fair preponderance of the evidence to the defendant's affirmative defense, and asks this court to determine that the defendant had met the fair preponderance standard. General Statutes § 53a-12 (b).[8]

The defendant's claim that the trial court applied an erroneous standard of proof rests upon several comments made by the court at the time the defendant was sentenced. At the sentencing hearing, which was held several months after the rendering of the verdict of guilty, the court stated: "You are to be sentenced, confined to the Whiting Institute for custody, care and treatment. You are entitled to a hearing, and that is of course what we are here about this time. Now, based upon the testimony which I have heard at this hear-

reports of his staff. Upon review of each report and upon consideration of what is for the benefit of the patient and for the benefit of society, the director shall determine that such patient: (1) Remain in the institute for further treatment or be transferred to some other facility under the control of the commissioner or (2), if such patient is under commitment, be granted a leave of absence or extended visit or (3), if such patient is under sentence and is eligible for parole, be granted a parole; or (4) has sufficiently improved to warrant his discharge from the institute provided if such person was sentenced and confined in the institute under section 17-245, he shall not be released except upon order of the court by which he was confined under said section, after notice to said court by the director.

"(b) The court, upon its own motion or at the request of the defendant or his attorney, may at any time hold a hearing to determine whether such person should be discharged from the institute prior to the expiration of the maximum period of his sentence. Prior to such hearing, the institute shall file a report with the court concerning the patient's mental condition. The court may appoint a physician specializing in psychiatry to examine the patient and report to the court. Such hearing shall be held at least once every five years. If the court determines the patient should be discharged from the institute, it shall then determine whether the patient should be released, granted parole or returned to the custody of the commissioner of correction."

[8] General Statutes § 53a-12 (b) provides: "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

ing, it appears to this Court that, although the Court is not fully convinced that you are not now suffering from a mental illness, the Court certainly was not fully convinced that you were suffering from a mental illness which means you are dangerous to yourself or to others at the time of the crime; that the court is not fully convinced that you are suffering from such illness at this time. There is, however, in the Court's mind some doubt.''

The defendant contends that these statements demonstrate that the court applied, to the affirmative defense pleaded by the defendant, a higher standard than the requisite fair preponderance of the evidence. These statements were not, however, related to the court's determination of guilt or innocence, but rather to the imposition of a sentence. The statements related to the trial court's choice of whether to confine the defendant for psychiatric care, or to order him committed to the custody of the commissioner of correction.

The trial court's remarks at the time the judgment of guilty was rendered, four months earlier, belie this claim of error. When rendering its verdict, the court stated prior to its summary of the evidence, that the affirmative defense had to be "proven by the defendant by a fair preponderance of the evidence." Subsequent to its review of the evidence, the court concluded that "the defense has failed to prove by a fair preponderance of the evidence that the defendant lacked capacity as a result of mental illness either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of law." The court had also noted that the question of the effect of the mental disease or defect was one of degree, and that while the defendant was probably suffering from some degree of mental illness or emotional upset, "[t]he general and professional evidence points to the conclusion that he did appreciate the wrongfulness of his conduct at the

time he committed the acts . . . ." The transcript of the proceedings at which the defendant was found guilty makes clear that the court applied the proper burden of proof to the evidence presented at trial.[9]

The defendant also seeks to have us determine that he had established his affirmative defense by a fair preponderance of the evidence. The evidence presented by the defendant was the testimony of several psychiatric experts. Their testimony included the opinions they held about the mental condition of the defendant at the time that he ignited the fire for which he was convicted of arson. In rebuttal, the state presented testimony by fire department personnel who spoke to the defendant at the scene of the fire, the police detective who interviewed the defendant after the fire, and the defendant's wife and mother-in-law. "[O]ur review of the conclusions of the trier of fact, whether it be a judge, a panel of judges or a jury is limited." *State* v. *Evans,* 203 Conn. 212, 238, 523 A.2d 1306 (1987). We construe the evidence in the light most favorable to sustaining the trial court's judgment. The conclusion of the trier of fact must be affirmed if it is reasonably supported by the evidence and logical inferences drawn from the evidence. Id.

The state presented no expert testimony on the defendant's mental disease, defect, or lack thereof, but

[9] The defendant also argues that the trial court considered evidence of one of the courtroom sheriff's personal lives as relevant to the defendant's claim that he was suffering from the post-traumatic stress disorder known as "Vietnam Syndrome." At the time of the remarks about the sheriff's adjustment to society after having served in Vietnam, the defendant was presenting a psychiatric expert whose testimony included the possibility that the defendant was suffering from that disorder. The trial court asked the witness a series of questions, using the sheriff as an example, in seeking a fuller understanding of that disorder.

The evidence considered at a sentencing hearing may be "information that would be inadmissible for the purpose of determining guilt." *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d 1242 (1986).

has no obligation to do so in order to refute evidence of the affirmative defense of insanity. *State* v. *Evans,* supra, 238–39; *State* v. *Ontra,* 178 Conn. 480, 485–86, 423 A.2d 134 (1979). The trier was presented with conflicting evidence about the defendant's mental condition, and was entitled to weigh that evidence in considering the defendant's mental condition. *State* v. *Evans,* supra, 239. The state extensively cross-examined the psychiatric witnesses, and presented testimony relevant to the defendant's history and his conduct at the scene of the crime. The defendant's psychiatric witnesses did not testify to an unshakable conviction that it was the defendant's mental condition, absent the ingestion of alcohol, which was the cause of his criminal behavior. The court is not compelled to accept the testimony of a psychiatric expert as conclusive on the issue of the defendant's mental condition as it relates to his guilt of the crime with which he is charged. *State* v. *Evans,* supra, 238–39. The trial court's duty is to weigh the evidence and conclude whether the defendant has established his affirmative defense. *State* v. *Evans,* supra; *State* v. *Ontra,* supra; see also *In re Juvenile Appeal (Docket No. 9260),* 184 Conn. 157, 170–71, 439 A.2d 958 (1981). In this case, the court did perform that duty, and specifically found, as to the affirmative defense of insanity, that "[t]he opinions of the psychiatrists are contrary to the weight of the evidence before the court . . . . [T]he defense has failed to prove by a fair preponderance of the evidence that at the time he committed the crime he lacked substantial capacity as a result of his mental illness to appreciate the wrongfulness of his act to control his conduct within the requirements of the law." The evidence at trial, which was conflicting, supports the finding that the defendant had not borne his burden of proof on the affirmative defense, and our review of the rec-

ord does not lead us to conclude that the court erred in arriving at its finding of guilt.

The defendant also contends that the court erred by assigning to him the burden of proving that the ingestion of alcohol did not cause the mental disease or defect which impaired his capacity to appreciate the wrongfulness of his act or to conform his conduct to the requirements of law. The affirmative defense of insanity is not available when the mental disease or defect has been proximately caused by the voluntary ingestion of intoxicating liquor. General Statutes § 53a-13 (b). The defendant asserts that the court's finding that "there is no credible evidence that the defendant would have committed the crime of arson in the first degree if he had not let down the bars by drinking alcoholic beverages before the incident" erroneously placed on him the burden of proving that alcohol did not contribute to such conduct.

A reading of the plain language of the statute makes it clear that the affirmative defense is unavailable where the voluntary ingestion of intoxicating liquor has caused the disease or defect which has rendered the defendant substantially incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the law. The state may offer evidence that intoxicating liquor was voluntarily ingested so as to cause the disease or defect, to refute the evidence that insanity absolves the defendant of criminal responsibility.

The defendant's argument is that the court found that the defect from which the defendant suffered was so severe that he lacked the capacity either to appreciate the wrongfulness of his conduct, or was unable to conform his conduct to the requirements of law, but failed to find that this defect was caused by his voluntary ingestion of alcohol. If the trial court's decision is inter-

preted to hold that the mental disease or defect was present, but was caused by the voluntary ingestion of alcohol, the state in this case has borne its burden of rebutting the defense. The evidence at trial established that the only violent acts the defendant had ever committed all involved the ingestion of alcohol. This evidence, in conjunction with the psychiatric testimony of various theories of mental disease or defect, and testimony relating to the defendant's conduct at the scene, reasonably support a conclusion that it was the ingestion of alcohol which caused the defect which substantially impaired the defendant at the time he lit the fire. The court's findings that the defendant had not proved his affirmative defense did not mean that the court failed to find that the defendant had voluntarily ingested alcohol.[10] There is nothing in the record to indicate that the court erred in its application of the statutory requirements to the facts in this case.

The defendant's final claim is that the trial court erred during the hearing conducted pursuant to General Statutes § 17-251. The defendant was brought before the court on January 7, 1986, for a hearing to determine whether he should be discharged from Whiting Forensic Institute as recommended by its report, and what his disposition should be upon discharge. The trial court ordered the defendant discharged and ordered him transferred to the custody of the commissioner of correction to serve the remainder of his sentence.

In so doing, the court ruled that it could order the release of the defendant only "if he is eligible for release

---

[10] We note that the trial court's decision does not compel the conclusion that at the time the defendant committed the crime he was suffering from a defect which rose to the level necessary for the affirmative defense of General Statutes § 53a-13. The decision may be read to conclude that the court found that the lowering of the defendant's inhibitions and his decision to commit arson were causally unrelated to a mental defect.

. . . but I don't think the court can release him in midsentence." The record is therefore clear that the trial court ruled that it was constrained not to consider releasing this defendant from the custody of the commissioner of correction. See *State* v. *Jenkins,* 198 Conn. 671, 674–75, 504 A.2d 1053 (1986). The defendant claims that the court had the discretion under the statute to order the release of the defendant upon the recommendation of discharge from the institute. The state conceded on appeal that the court did have such discretion.[11] We, however, are not bound by such a concession. *State* v. *Putnoki,* 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986).

In this case, the defendant was found guilty, and was thus held criminally responsible for his acts. *State* v. *Evans,* supra, 245 (*Peters, C. J.,* dissenting). His commitment to Whiting for psychiatric care was ordered pursuant to a statutory scheme which provides that persons who have been convicted of certain types of crimes who may require psychiatric care and custody may be sentenced to institutions where such care is available. General Statutes §§ 17-244, 17-245. Persons who are sentenced in accord with this scheme may not be subject to care, custody and treatment beyond the maximum period of the sentence for the crime. General Statutes § 17-245 (c).[12] The provisions of General Statutes §§ 17-244 and 17-245 are separate and distinct

[11] We note that our Supreme Court has stated that under the present statutory scheme that "[t]he ordinary prisoner, who is being punished for a crime, must serve the remainder of his term of imprisonment regardless of whether treatment for his mental condition has been successful." *State* v. *Reed,* 192 Conn. 520, 529–30, 473 A.2d 775 (1984). That statement is not controlling here, because it was made *in dictum,* in a case relating solely to the liability of insanity acquittees for the cost of their court-ordered institutionalization.

[12] General Statutes § 17-245 (c) provides, in pertinent part: "The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence."

from those which govern the disposition of persons who have been found not guilty by reason of insanity, and who are, therefore, not held criminally responsible for their acts. General Statutes §§ 17-257a through 17-257w. The statutory scheme reveals that the director of the institute shall review the semi-annual reexamination reports of the patient, and make a determination as to the disposition of the patient. The possible dispositions include the discharge of the patient from the institute, if his condition has sufficiently improved to warrant such discharge. There is a provision in the statute that a patient who it is determined should be discharged "shall not be released except upon order of the court by which he was confined under said section, after notice to said court by the director." General Statutes § 17-251 (a) (4).

The director in this case notified the court of his determination by filing a copy of his report and recommendation that the defendant had improved sufficiently to be discharged from the institute. The court thereupon ordered the defendant discharged from the institute, but returned to the custody of the commissioner of correction. The statute mandates that the court shall, upon ordering the discharge of the defendant, determine whether he "should be released, granted parole or returned to the custody of the commissioner of correction." General Statutes § 17-251 (b). The issue we face, therefore, is whether the provision for the release of the defendant upon discharge from the institute confers upon the court the discretion to modify its prior sentence.

Confinement of defendants convicted and sentenced under the penal code who are committed for psychiatric care may not exceed the maximum period specified in the sentence. General Statutes § 17-245 (c). Thus, a defendant who has served the maximum period of his sentence can no longer be confined at the institute. A

person found not criminally responsible but committed for psychiatric care and custody may likewise be committed only for the maximum period for which he or she could have been confined had there been a conviction. General Statutes §§ 17-257c (e) (1), 17-257n (c).

When the required hearing upon the director's recommendation is conducted pursuant to this statutory scheme, and the court has determined that the defendant should be discharged, it must then determine what his disposition shall be in conjunction with his discharge from the institute. The statute mandates that the court "shall then determine whether the patient should be released, granted parole or returned to the custody of the commissioner of correction." General Statutes § 251 (b). There is, therefore, no doubt that the court could grant parole to an eligible defendant, or, as in this case, order him to the custody of the commissioner of correction. Although the statute provides for a final alternative, release, it must be read so that all of its parts have meaning, make common sense, and avoid bizarre results. *In re Juvenile Appeal (84-6)*, 2 Conn. App. 705, 709, 483 A.2d 1011 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985); *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care*, 2 Conn. App. 68, 75, 477 A.2d 660 (1984). No word in the statute should be read to be superfluous and without meaning, and "[w]here, as here, more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law . . . ." *Berger* v. *Tonken*, 192 Conn. 581, 589, 473 A.2d 782 (1984); *Vartuli* v. *Sotire*, 192 Conn. 353, 362, 472 A.2d 336 (1984); *State* v. *West*, 192 Conn. 488, 494, 472 A.2d 775 (1984). We must construe these statutes on the institutionalization of persons convicted of crime with the statutes regarding their sentencing and punishment in a manner which is har-

monious, and consistent with "each to leave room for the meaningful operation of the other." *State* v. *West,* supra, 494.

In this case, the defendant was committed to the institute in conjunction with his conviction under the penal code. Indeed, the statutory scheme under which the hearing took place is concerned with the disposition of persons who have been convicted and sentenced under the penal code. We read the use of the word "release," therefore, in conjunction with its use in the penal code. Under the statutory scheme, the defendant may not be held in the custody of the institute beyond the maximum period of his sentence, as contrasted to the alternative of ordering his return to the custody of the commissioner of correction. We, therefore, read the use of the word "release" to vest the court with discretion, upon its determination that the defendant should be discharged from the institute, to modify the original sentence of the defendant if he would otherwise be eligible for release under the penal code.

The "release" of a criminal defendant from the custody of the commissioner of correction is ordinarily ordered by the court either as a conditional or an unconditional discharge. The determination of whether to release a defendant by conditional or unconditional discharge is made at the time of sentencing, but persons convicted of any class A felony are not eligible for such release. General Statutes §§ 53a-28, 53a-29. Defendants who have received definite sentences between two and five years may be conditionally discharged by the sentencing court after a hearing and for good cause shown. General Statutes § 53a-39. The defendant in this case falls into neither of the above classes of persons eligible for release, as he was convicted of a class A felony and sentenced to a term of incarceration. Nor is the defendant eligible for an unconditional discharge,

that is, a release without the imposition of any condition. General Statutes § 53a-34. The use of the word "release" in the statutory scheme regarding the disposition of persons convicted of crimes, read in light of the dual legislative purposes of psychiatric care and criminal rehabilitation and punishment, should be read to apply to those persons eligible for release from custody under the penal code. To hold otherwise would lead to the bizarre and irrational result that persons who are criminally responsible for their actions, who have been convicted and sentenced and who would not be otherwise eligible for discharge from the custody of the commissioner of correction, might serve only six months in a psychiatric institute, and then upon reexamination and a hearing, be released from any further confinement.

Under the defendant's construction of General Statutes § 17-251, the fact that his conviction was followed by a commitment to the institution and a subsequent recommendation of discharge by the director could have the same effect as an initial finding that he had proved his affirmative defense, that is, he would be absolved of all criminal responsibility for his behavior, as if his guilt were expiated by the care, custody and treatment of the institution. *State* v. *Evans,* supra, 244 (*Peters, C. J.,* dissenting). Such a result would be anamolous.

Even if the trial court had recognized that there are circumstances when a defendant confined to the institution after conviction may be released, the facts of this case would have precluded the exercise of such discretion.

There is no error.

In this opinion the other judges concurred.