# STATE OF CONNECTICUT *v.* GARY L. HANSON
## (13264)

HEALEY, SHEA, CALLAHAN, HULL and SANTANIELLO, Js.

Argued October 14, 1988—decision released March 28, 1989

*Vincent J. Giedraitis,* public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Donald Caldwell,* state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant was found guilty of the crime of arson in the first degree in violation of General Statutes § 53a-111.[1] Upon conviction, he was sentenced to a definite term in prison and transferred to the Whiting Forensic Institute, the trial court having found that the defendant was mentally ill and dangerous to himself and others. After commitment and confinement from January 9, 1985, to January 7, 1986, the defendant was presented in court, in accordance with General Statutes § 17-251 (b),[2] to determine

---

[1] "[General Statutes] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

"(b) Arson in the first degree is a class A felony."

[2] "[General Statutes] Sec. 17-251. REVIEW OF CASES AFTER PERIODIC EXAMINATIONS. DISPOSITION OF CASES: FURTHER TREATMENT, TRANSFER, LEAVE OF ABSENCE, PAROLE. (a) As soon as is practicable the director shall act upon the examination reports of his staff. Upon review of each report and upon consideration of what is for the benefit of the patient and for the benefit of society, the director shall determine that such patient: (1) Remain in the institute for further treatment or be transferred to some other facility under the control of the commissioner or (2), if such patient is under commitment, be granted a leave of absence or extended visit or (3), if such patient is under sentence and is eligible for parole, be granted a parole; or (4) has sufficiently improved to warrant his discharge from the institute provided if such person was sentenced and confined in the institute under section 17-245, he shall not be released except upon order of the court by which he was confined under said section, after notice to said court by the director.

whether he was eligible for discharge from Whiting and to determine his disposition if discharged. As a consequence, he was returned to the custody of the commissioner of correction to serve the balance of his sentence.

On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court, *Kelly, J.,* erred in determining that it had no discretion to release the defendant from incarceration pursuant to § 17-251. The Appellate Court concluded, however, that the trial court had no discretion to release the defendant because he was not otherwise eligible for release under the penal code. *State* v. *Hanson,* 12 Conn. App. 32, 45, 529 A.2d 720 (1987). This court granted the defendant's petition for certification to determine whether the Appellate Court erred in affirming the judgment of the trial court. We reverse the decision of the Appellate Court and remand the case with direction.

Although the facts that the trial court could reasonably have found are set forth in *State* v. *Hanson,* supra, we summarize those facts pertinent to the issues in this appeal. The defendant was charged with two counts of attempted murder in violation of General Statutes §§ 53a-54a and 53a-49 and one count of arson in the first degree in violation of General Statutes § 53a-111. He was tried to the court, *Hale, J.,* and acquitted of the two counts of attempted murder, but found guilty of the count of arson in the first degree. During the

"(b) The court, upon its own motion or at the request of the defendant or his attorney, may at any time hold a hearing to determine whether such person should be discharged from the institute prior to the expiration of the maximum period of his sentence. Prior to such hearing, the institute shall file a report with the court concerning the patient's mental condition. The court may appoint a physician specializing in psychiatry to examine the patient and report to the court. Such hearing shall be held at least once every five years. If the court determines the patient should be discharged from the institute, it shall then determine whether the patient should be released, granted parole or returned to the custody of the commissioner of correction."

course of the trial, the court heard psychiatric testimony from two physicians regarding the defendant's mental state. On January 9, 1985, after considering a report from the Whiting Forensic Institute, the testimony presented and the arguments of both counsel, the trial court sentenced the defendant to the custody of the commissioner of correction for a term of fifteen years. Because the court also found that Hanson was dangerous to himself and to others, it ordered him confined to the Whiting Forensic Institute for custody, care and treatment in accordance with General Statutes § 17-245.[3] The court stated: "If the Director should find that the defendant is sufficiently improved to be discharged from the institute, it is the strong recommendation to the Court hearing the matter under [General Statutes § 17-251] that the defendant serve at least a portion of this sentence."

On January 7, 1986, the defendant appeared before the trial court, pursuant to General Statutes § 17-251 and asked the court to enter an order transferring him to another institution, such as Connecticut Valley Hospital, or in the alternative to heed Judge Hale's recommendation at sentencing and require him to serve some lesser portion of his fifteen year sentence. Judge Kelly, however, discharged the defendant from Whit-

---

[3] "[General Statutes] Sec. 17-245. DISPOSITION OF DEFENDANT AFTER REPORT. . . .

"(c) If at such hearing the court finds the defendant is not in need of custody, care and treatment at the institute, it shall sentence him in accordance with the conviction or place him on probation. If the court finds that such person is in need of outpatient psychiatric treatment, it may place him on probation on condition that he receive such treatment. If the court finds such person to be mentally ill and dangerous to himself or others and to require custody, care and treatment at the institute, it shall sentence him in accordance with the conviction and order confinement in the institute for custody, care and treatment provided no court may order such confinement if the report does not recommend confinement at the institute. The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence."

ing and transferred him to the commissioner of correction to serve the remainder of his fifteen year sentence, stating that he could not resentence the defendant because "[h]e has already been sentenced." The defendant appealed to the Appellate Court claiming that the trial court erred in finding that it lacked the authority to release the defendant before he was eligible for release under his original fifteen year sentence. The Appellate Court sustained the trial court ruling and concluded that the trial court had no discretion to release the defendant because he was not otherwise eligible for release under the penal code. *State* v. *Hanson,* supra, 45.

The sole issue raised on appeal is whether the Appellate Court erred in concluding that in a proceeding pursuant to § 17-251, the court may not modify the sentence previously imposed if modification is otherwise prohibited under the penal code.

Under § 17-251 (b), a hearing is held to determine whether a defendant who is confined to Whiting for psychiatric care under General Statutes §§ 17-244[4] and 17-245 should be discharged from the institute. If the court determines that the patient should be discharged, it must then determine whether the patient should be

[4] General Statutes§ 17-244 provides in part: "CERTAIN CONVICTED PERSONS TO BE EXAMINED. REPORT AND RECOMMENDATION. (a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel or the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. . . ."

released, granted parole or returned to the custody of the commissioner of correction. The Appellate Court concluded that the word "release" in § 17-251 (b) was to be read in conjunction with its use in the penal code, and therefore "to vest the court with discretion, upon its determination that the defendant should be discharged from the institute, to modify the original sentence of the defendant if he would otherwise be eligible for release under the penal code." *State* v. *Hanson,* supra, 45. The Appellate Court upheld the denial of relief to the defendant under § 17-251 (b) by concluding that the defendant was ineligible for release under the penal code for two reasons. We find error in both reasons offered by the Appellate Court and disagree in its reading of the word "release" in § 17-251 (b).

The first ground relied upon by the Appellate Court was that the defendant's conviction of a class A felony made him ineligible for conditional or unconditional release under General Statutes §§ 53a-28[5] and 53a-29.[6]

---

[5] "[General Statutes] Sec. 53a-28. AUTHORIZED SENTENCES. (a) Except as provided in chapter 368p, to the extent that such chapter is inconsistent herewith, every person convicted of an offense shall be sentenced in accordance with this title.

"(b) Except as provided in sections 53a-45, 53a-46a, 53a-54b and 53a-92, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by sections 18-65a or 18-73 or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation, or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65 or 18-73; or (8) a sentence of unconditional discharge.

"(c) A sentence to a period of probation or conditional discharge in accordance with sections 53a-29 to 53a-34, inclusive, shall be deemed a revocable disposition, in that such sentence shall be tentative to the extent that it may be altered or revoked in accordance with said sections but for all other purposes it shall be deemed to be a final judgment of conviction."

[6] General Statutes § 53a-29 provides in part: "PROBATION AND CONDITIONAL DISCHARGE: CRITERIA; PERIODS. (a) The court may sentence a per-

The Appellate Court did not consider the possibility of a suspended sentence and probation, apparently assuming that such a sentence would be contrary to General Statutes §§ 53a-35a[7] and 53a-29 (a). This court, however, in *State* v. *O'Neill*, 200 Conn. 268, 511 A.2d 321 (1986), held that a sentencing court has discretion to enter a suspended sentence for a first degree arson conviction. In *O'Neill*, we found that the trial court's failure to exercise its discretion to consider any suspension

son to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of the guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice.

"(b) The court may impose a sentence of conditional discharge for an offense, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; and (2) probation supervision is not appropriate. . . ."

[7] "[General Statutes] Sec. 53a-35a. IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a; (2) for class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for a class B felony, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-55a, 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (5) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (6) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b, the term shall be not less than two years nor more than five years, and for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years; (7) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

of a sentence for first degree arson was a violation of the defendant's equal protection rights.[8] Because the defendant was convicted for first degree arson, he could have received a suspended sentence. Therefore, the Appellate Court erred in concluding that General Statutes §§ 53a-28 and 53a-29 prohibited the defendant's release under § 17-251 (b).

The second ground relied upon by the Appellate Court was that General Statutes § 53a-39[9] prohibits the early release of a defendant who has been sentenced to a definite term exceeding three years. Noting that the defendant had been convicted and sentenced under the penal code to a definite sentence of fifteen years, the Appellate Court concluded that the defendant was therefore ineligible for discharge or intensive probation under § 53a-39. While the Appellate Court

[8] Having ruled, in *State* v. *Dupree,* 196 Conn. 655, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985), that a sentencing court has authority to suspend a portion of a sentence for arson murder in violation of General Statutes § 53a-54d this court, in *State* v. *O'Neill,* 200 Conn. 268, 511 A.2d 321 (1986), found that the trial court's failure to exercise discretion to consider a suspended sentence for first degree arson constituted a violation of the defendant's right to equal protection under our federal and state constitutions because it resulted in a harsher penalty for a defendant who acted with less culpable intent and who caused a less serious result.

[9] General Statutes § 53a-39 provides in part: "REDUCTION OF DEFINITE SENTENCE OF THREE YEARS OR LESS. DISCHARGE OF DEFENDANT. INTENSIVE PROBATION. At any time during the period of a definite sentence of three years or less, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which he could have been originally sentenced. At any time during the period of a definite sentence of at least two years but not more than five years, the sentencing court or judge shall refer any application of a defendant seeking placement in the intensive probation program to the office of adult probation for assessment and recommendations and may, after hearing and for good cause shown, order the defendant discharged on intensive probation in accordance with subsection (b) of section 54-105 for a period of at least one year but not more than the unexpired portion of the sentence. . . ."

accepted that the court could grant parole to an eligible defendant, or order him to be returned to the custody of the commissioner of correction pursuant to § 17-251 (b), it concluded that the word "release" in the statute must be construed in accordance with the statutes regarding sentencing and punishment, for "[t]o hold otherwise would lead to the bizarre and irrational result that persons who are criminally responsible for their actions, who have been convicted and sentenced and who would not be otherwise eligible for discharge from the custody of the commissioner of correction, might serve only six months in a psychiatric institute, and then upon reexamination and a hearing, be released from any further confinement." *State* v. *Hanson,* supra, 46. The Appellate Court concluded, therefore, that § 53a-39 served to limit the discretion of the trial court to order release under § 17-251 (b).

We find our decision in *Murray* v. *Lopes,* 205 Conn. 27, 529 A.2d 1302 (1987), dispositive on the issue of the correct interpretation of the word "release" in § 17-251 (b). While *Murray* v. *Lopes* dealt with the application of statutory sentence reduction credit to individuals sentenced and confined at Whiting for custody, care and treatment pursuant to General Statutes § 17-245 (c), we noted that "the benefit of early release under § 17-251 is in addition to, not in lieu of, the statutory sentence reduction credit that automatically accrues to all prisoners," and "the fact that there are two *different* statutory release systems does not compel the conclusion that they are inconsistent or conflict with each other." (Emphasis added.) *Murray* v. *Lopes,* supra, 35–36. The possibility of release through sentence modification under § 53a-39 is distinct from the possibility of release under § 17-251 (b). Although both statutes operate similarly by giving the court discretion to order release, they are different mechanisms for release.

The word "release" as used in § 17-251 (b) is clear and unambiguous. To find support for the Appellate Court's position, this court would have to ignore its previous decisions that have held that if the language of a statute is clear and unambiguous, courts cannot, by construction, read into statutes provisions that are not clearly stated. See *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *Johnson* v. *Manson,* 196 Conn. 309, 314, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981).

We acknowledge the Appellate Court's concern that reading "release" under § 17-251 (b) independent of the penal code could result in the release of a defendant convicted and sentenced under the penal code from any further confinement after six months at Whiting. If, for instance, an individual were convicted and sentenced to a nonsuspendible sentence of ten years in the Connecticut correctional institution at Somers, that individual would not be eligible for sentence reduction and would serve the full ten year term. If that same individual had been found to be in need of custody, care and treatment under General Statutes §§ 17-244 and 17-245, early release from his previously imposed sentence of ten years would be possible upon his discharge from Whiting pursuant to § 17-251 (b). Furthermore, an individual found to be in need of observation and treatment in a mental hospital following sentencing and transferred to such a facility pursuant to General Statutes §§ 17-194d or 17-194e must be returned to the custody of the commissioner of correction to complete his sentence upon recovery and discharge from the mental hospital. General Statutes § 17-194f.[10]

---

[10] "[General Statutes] Sec. 17-194f. DISCHARGE FROM HOSPITAL OF INMATES OF CORRECTIONAL INSTITUTIONS. The provisions of section 17-192 shall apply to any person committed to such hospital pursuant to sections

Although we might disfavor the inconsistent results outlined above, "[i]t is not the function of this court to alter the will of the legislature merely because the results are unfair." *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 334, 471 A.2d 646 (1984). "Where statutory language is clearly expressed . . . courts must apply the legislative enactment according to the plain terms and 'cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result.' " *Johnson* v. *Manson,* supra, 315. " 'It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature.' " *State* v. *Perrucio,* 192 Conn. 154, 163 n.4, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984), quoting *Duart* v. *Axton-Cross Co.,* 19 Conn. Sup. 188, 190, 110 A.2d 647 (1954).

We go no further than to point out that revision and clarification of General Statutes § 17-251 by the legislature is necessary. As it stands, the statute appears to authorize the director of Whiting and the trial court to grant "parole" to a patient sentenced and committed by the court. If that option was ever truly available to the director or the trial court under the statutes relating to parole,[11] it is no longer a viable option with the

17-194d and 17-194e, except that upon such discharge (1) the person shall be returned to any such institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated and (2) the commissioner of correction shall notify the prosecuting official of any court in which any such person has criminal charges pending against him."

[11] "[General Statutes] Sec. 54-125. PAROLE. Any person confined for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than the minimum term imposed by the court, less such time as may have been earned under the provisions of section 18-7, may be allowed to go at large on parole in the discretion of the panel of the board of parole for the institution in

advent of definite sentencing in Connecticut in 1980.[12] As has already been pointed out, that portion of § 17-251 (b) that authorizes the trial court to release a sentenced patient upon discharge from Whiting produces questionable results.

Cognizant of our responsibility to afford the defendant his right to equal protection, we believe a remand

which the person is confined, if (1) it appears from all available information, including such reports from the commissioner of correction as such panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society. Such parolee shall be allowed in the discretion of such panel to return to his home or to reside in a residential community center, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled person, as such panel prescribes, and to remain, while on parole, in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. Any parolee released on condition that he reside in a residential community center may be required to contribute to the cost incidental to such residence. Each order of parole shall fix the limits of the parolee's residence, which may be changed in the discretion of such panel. Within one week after the commitment of each person sentenced for more than one year during any criminal term of the superior court, the state's attorney of each county and judicial district shall send to the board of parole the record, if any, of such person. In the case of an inmate serving a sentence at the John R. Manson Youth Institution, Cheshire, or at the Connecticut Correctional Institution, Niantic, the board of parole shall establish, by rule, the date upon which said board shall notify the inmate that his eligibility for parole will be considered. At any time prior thereto the commissioner of correction may recommend that parole be granted and, under special and unusual circumstances, the commissioner may recommend that an inmate be discharged from the institution."

[12] Public Acts 1980, No. 80-442, §§ 9 and 10 provide: "Sec. 9. Subsection (a) of section 53a-35 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) [A] FOR ANY FELONY COMMITTED PRIOR TO JULY 1, 1981, THE sentence of imprisonment [for a felony] shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d).

"Sec. 10. (NEW) For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court . . . . ."

to the original sentencing court is in order with the direction that it resentence the defendant with the knowledge that a suspended sentence is now available, though not mandatory, for first degree arson. As we stated earlier, *State* v. *O'Neill,* supra, held that the trial court erred in refusing to exercise its discretion to consider any suspension of the defendant's sentence for first degree arson. Because our decision in *O'Neill* followed the defendant's sentencing in the present case,[13] the trial court was unaware that it had discretion to give the defendant a suspended sentence.

There is error, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction that it be returned to the original sentencing court for resentencing in accordance with this opinion.

In this opinion the other justices concurred.

---

[13] The defendant was sentenced on January 9, 1985, and our decision in *State* v. *O'Neill,* 200 Conn. 268, 511 A.2d 321 (1986), was released on June 24, 1986.