[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 21, 1997
On February 4, 1994, following a jury trial at which the defendant was convicted of the crimes of manslaughter in the second degree with a motor vehicle, in violation of Gen. Stats. Sec. 53a-56b, assault in the second degree with a motor vehicle in violation of Gen. Stats. Sec. 53a-60d and operating under the influence, in violation of Gen. Stats. Sec 14-227a(a),[1] the undersigned sentenced the defendant to a total effective term of thirteen years, execution suspended after two and one-half years, plus five years of probation. The charges against the defendant arose out of a motor vehicle accident which occurred on May 21, 1992 in Stonington when the defendant's automobile crossed from the westbound lane to the eastbound lane of Route 1, colliding with an automobile driven by Charles S. Rice, Sr., and containing as a passenger his wife, Marabeth Rice. Mr. Rice was taken by Lifestar Helicopter to Hartford Hospital with severe injuries. Mrs. Rice was pronounced dead at Westerly Hospital in Rhode Island. The defendant was also injured in the accident and was hospitalized for approximately two weeks. The evidence produced at trial was to the effect that the defendant was intoxicated at the time of the accident. The jury, in convicting the defendant of the principal charges against her, necessarily found that the death of Mrs. Rice and the injuries to Mr. Rice were as a consequence of her intoxication.
At the lengthy sentencing hearing, which followed the preparation CT Page 3197 of a Presentence Investigation Report by the Office of Adult Probation, the court heard from members of the Rice family as well as the Assistant State's Attorney who prosecuted the case, and it received correspondence from a representative of Mothers against Drunk Driving (MADD). The court also heard oral presentations from the defendant's attorney, an alternative sentence planner (Clinton Roberts), and the defendant's attending psychiatrist, Bassan Awwa, M.D. The court reviewed numerous letters of support for the defendant, who, however, declined to say anything on her own behalf before sentence was imposed.
The principal issues which the court had to balance in arriving at a fair and just sentence included the fact that the defendant's conduct resulted in the loss of one person's life and serious physical injury to another; the fact of and the extent of the defendant's intoxication; a number of stress producing events in the defendant's life prior to the event; the fact that the defendant had no prior criminal record and, in fact, had been a productive and contributing member of society for all of her life; and the fact that the defendant appeared to have little insight either into the nature and extent of her drinking problem or its contribution to the accident that so devastated the Rice family. Specifically, the defendant appeared unable or unwilling to express responsibility and remorse for her actions. Although the court detected much in the way of self-pity, it saw little in the way of self-reproach.
Balancing all those factors as best it could, the court imposed a sentence of ten years suspended after two and one-half on the manslaughter count, with three years consecutive, suspended, on the assault count, for a total effective term of thirteen years suspended after two and one-half, with probation.[2] The court went on to note:
 Because I recognize the mental health issues that have been brought to my attention and I am concerned about them, I do want to leave open the possibility of an earlier modification and earlier release. If Miss Corrigan demonstrates what to me, and to others who are able to judge this, appear to be acceptance of responsibility, acceptance of her abuse and her rehabilitation, I'll consider an earlier release at that point . . . my hope is that she'll do that. Frankly, I hope that's what happens. I encourage with your assistance — yours and anybody else's — to have her work toward that possibility. If the request can be made in good faith. I'll consider it in good faith. I'll make no other promises than to keep the option open. CT Page 3198 (Transcript of sentencing hearing. p. 81-82.)
During the time that the appeal was pending, the defendant was released on bail and in fact participated in an in-patient psychiatric program at McLean Hospital in Belmont, Massachusetts, followed by out-patient psychotherapy. She has been diagnosed as having clinical depression and post-traumatic stress disorder and anxiety attacks, for which she has received medication. She also began a program of antabuse to combat her dependence on alcohol.
When all appeals were exhausted, the defendant surrendered herself and began serving her sentence on October 15, 1996. During her incarceration at Connecticut Correctional Institution at Niantic, she completed a six-month substance abuse treatment program at the Marilyn Baker House. Although she filed a motion for modification of sentence five days before her surrender, she did not ask the court to hold a hearing on it until nearly eight months after she began serving her sentence.
Prior to hearing arguments as to the merits of the motion for modification, the court was first faced with a threshold issue raised by the state, which contends that, because the sentence of the court was thirteen years, suspended after two and one-half years, the court lacks jurisdiction to modify its sentence. In particular, it points to General Statutes § 53a-39, which only gives the court the authority to modify any definite sentence of three years or less.[3]
"In a criminal case the imposition of sentence is the judgment of the court." State v. Moore, 158 Conn. 461, 463, 262 A.2d 166 (1969). "When the sentence is put into effect and the prisoner is taken in execution, custody is transferred from the court to the custodian of the penal institution. At this point jurisdiction of the court over the prisoner terminates . . ." State v. Walzer, 208 Conn. 420, 424-25,545 A.2d 559 (1988). Once jurisdiction over the prisoner terminates, the sentencing "court may no longer take any action affecting the sentence unless it has been expressly authorized to act." State v.Tuszynski, 23 Conn. App. 201, 206, 579 A.2d 1100 (1990); State v.Nardini, 187 Conn. 109, 123, 445 A.2d 304 (1982); Kohlfuss v. Warden,149 Conn. 692, 695-96, 183 A.2d 626, cert. denied, 371 U.S. 928,83 S.Ct. 298, 9 L.Ed.2d 235 (1962). The legislature has conferred on trial courts continuing jurisdiction to act on their judgments after the commencement of sentence under a limited number of circumstances. See, e.g., General Statutes 53a-29 through 53a-34 (permitting the trial court to modify terms of probation after sentence is imposed); General Statutes 52-270 (granting jurisdiction to trial court to CT Page 3199 hear a petition for a new trial after execution of original sentence has commenced); General Statutes 53a-39 (allowing the trial court to modify sentences of less than three years provided a hearing is held and good cause shown). Mainiero v. Liburdi, 214 Conn. 717 (1990).
The defendant contends that the "three years or less" referred to in the statute relates to the actual term of imprisonment, which, in this case, was two and one-half years. The defendant therefore argues that the court does have jurisdiction to modify. As is obvious from the comments of the court at sentencing, it was this court's impression that it would have the authority to modify and on that basis it specifically invited the defendant to apply for a modification when certain preconditions had been met. It has long been a practice of this court, in appropriate cases, to set certain conditions at sentencing, which, if fulfilled by the defendant, would suggest to the court that he or she had earned the opportunity to have the sentence reduced.
The parties and the court have been unable to find any appellate case directly addressing this issue, which appears to be one of first impression. However, several decisions of the Appellate Court and the Supreme Court give this court some guidance. These cases, combined with the general scheme for revisiting sentences reflected in § 53a-39 and Practice Book Sec. 934[4] and the statutes and rules regarding the Sentence Review Division of Superior Court,[5]
convince this court that it does have the jurisdiction to modify.
The state relies on a line of cases which hold that it is the total effective sentence, rather than the individual components that make up that sentence, that determine whether the sentence may be modified. For example, in State v. Lombardo, 19 Conn. App. 631,639, 563 A.2d 1030 (1989), the Appellate Court held that "the term `sentence' as used in 53a-39 as applied to multiple sentences imposed on multicount informations, refers to the aggregate or total effective sentence." Because the total effective sentence here is thirteen years, suspended after two and one half years, the state argues that the thirteen year portion of the total effective sentence should render the entire sentence ineligible for modification. The problem with Lombardo and other cases that reach the same conclusion is that all involve situations in which both the suspended portion and the unsuspended portion of the sentence as originally imposed exceeded three years. No such case addressed the situation presented here, where the suspended portion of the sentence is in excess of three years, but the unsuspended portion is not. CT Page 3200
There are hints in other reported cases that the portion of the sentence that triggers eligibility for modification is the sentence of confinement, rather than that portion of the sentence which is suspended. For example, in State v. Luzietti, 230 Conn. 427 (1994), the court said: "The statute refers only to the reduction of theterm of imprisonment of the defendant. It does not refer to the underlying judgment of conviction." (Emphasis added.) The court, however, was not addressing the precise issue raised here, so that the comment, while instructive, must be viewed as dictum.
In Mainiero v. Liburdi, 214 Conn. 717, 724 (1990), the Appellate Court approved the following language of the habeas court: "The legislature has a rational basis to impose whatever guidelines and procedures it deemed appropriate. Section 53a-39 used the severity of the crime and length of incarceration as guidelines for rehabilitation and public safety . . . Accordingly, the distinctions drawn between sentences of different lengths and corresponding available alternatives or reduced punishments are rationally related. Section 53a-39 (rev'd 1989) is neither irrational nor arbitrary. In sum, the legislature has prescribed a statutorily harmonious and constitutional scheme for sentence modification, sentence review and intensive probation." (Emphasis added.)
A "prisoner is eligible to apply to the trial court for sentence modification pursuant to 53a-39 only if his sentence is not in excess of three years. If a prisoner's sentence is in excess of three years, then he must petition the sentence review division of the Superior Court pursuant to General Statutes 51-195 in order to have his sentence modified." Mainiero v. Liburdi, 214 Conn. 717, 722 (1990). This harmonious interrelationship between sentence review and sentence modification is important in light of the legislative intent that all sentences, except those which are the result of plea agreements, be subject to some kind of review, and in light of the specific language of the sentence review statute that limits its applicability to cases in which the "period of confinement" is three years or more. If the statutes are to be read as meshing so as to form a cohesive whole, and if sentence review is limited to cases of confinement for three years or more, then it makes sense to construe Sec. 53a-39 (a) as applying to sentences where the total effective term of confinement is three years or less.[6]
Section 51-195, the sentence review statute, provides that a reviewable sentence is one involving "a term of imprisonment for which the total sentence of all such counts amounts to confinementfor three years or more." (Emphasis added.) Moreover, not only does CT Page 3201 Sec. 51-195 specifically refer to sentences of confinement, but it also makes a provision for subsequent application for sentence review of a sentence which was originally suspended but in which the suspension is later revoked, presumably as the result of a violation of probation: "Any person . . . may . . . if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence . . . file . . . an application for review of the sentence by the review division . . ." It is thus at least apparent that a "total effective sentence" of thirteen years suspended would not be eligible for sentence review by the Division until the suspended sentence had been revoked and at least three years of the suspended sentence had been executed. Clearly, this defendant's sentence is not presently eligible for sentence review.
Even if the resolution of the precise issue raised by this case, the status of a thirteen year sentence suspended after two and one half years, is viewed as ambiguous, the legislative history suggests that the legislature intended to make this, and indeed all nonplea bargained sentences involving terms of confinement, subject to some sort of post-sentencing judicial oversight, and that if sentence review by the Division is not available, sentence modification by the trial court is. When confronted with ambiguity in a statute, we must "ascertain and give effect to the apparent intent of the legislature." Rhodes v. Hartford, 201 Conn. 89, 93, 513 A.2d 124
(1986). "In seeking to discern legislative intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to legislative practice and policy, and to judicial construction." Petti v. Balance RockAssociates, 12 Conn. App. 353, 359, 530 A.2d 1083 (1987); TexacoRefining Marketing Co. v. Commissioner, 202 Conn. 583, 589,522 A.2d 771 (1987).
The legislative history reveals that the concern of the legislature when it amended Sec. 53a-39 was to eliminate an overlap in the sentence modification area that resulted when the state shifted from indeterminate to determinate sentencing in 1981. Prior to the conversion to determinate sentencing, the only definite sentence a defendant could receive was a sentence of one year or less. General Statutes (Rev. to 1979) 53a-35, 53a-36. Section 53a-39
authorized modification of only those definite sentences. When indeterminate sentencing was abolished, 53a-39 remained, but by its language applied to all definite sentences. The result of the change in sentencing was that a defendant sentenced under the new system ostensibly could petition both the sentencing court and the sentence review division for a modification of a sentence of three CT Page 3202 years or more. See State v. Millhouse, 3 Conn. App. 497, 499-501,490 A.2d 517 (1985). By enacting Public Acts 1982, No 82-428, the legislature amended 53a-39, limiting the trial court's jurisdiction under the section to modifying only sentences of three years or less. The purpose of this change was twofold. First, it was designed to eliminate the overlap that allowed a prisoner serving a definite sentence of more than three years to petition for sentence review under 51-195 within thirty days of sentencing and then to petition repeatedly, at any time during the sentence, for modification under53a-39. It was also designed to allow modification of sentences ofthree years or less, those sentences not covered by 51-195. See alsoState v. Millhouse, supra, 499-500 (purpose of amendment to limit sentencing judge or court to a review of definite sentences of three years or less, thereby creating a cohesive body of law relating to sentencing). "The legislature is presumed to act in view of existing relevant statutes and with the intention of creating one consistent body of law." Caulkins v. Petrillo, 200 Conn. 713, 718, 513 A.2d 43
(1986). The legislative history indicates not only an awareness of51-195, but an intent to make 53a-39 compatible with and the counterpart to it. " `[W]here, as here, more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law . . . Berger v. Tonken,192 Conn. 581, 589, 473 A.2d 782 (1984) . . .' State v. Hanson,12 Conn. App. 32, 44, 529 A.2d 720 (1987). We therefore must construe the two statutes on modification of sentences" in a manner which is harmonious, and consistent[,] with `each to leave room for the meaningful operation of the other.' State v. West, 192 Conn. 488,494, 472 A.2d 775 (1984)." Id., 44-45.
The legislative history and the circumstances surrounding the amendment of 53a-39, as well as judicial interpretation thereof, lead us to conclude that the legislature intended to develop a consistent, harmonious statutory scheme for the modification of sentences. To this end, it allowed prisoners serving total effective sentences of three years or more on multicount complaints to have their sentences reviewed pursuant to 51-195. It also allowed prisoners serving sentences of three years or less to petition for modification of sentence pursuant to 53a-39. It would be inconsistent for us to hold that the legislature intended one procedure to apply to aggregate sentences and the other to apply only to individual sentences. Not only would this interpretation be inconsistent with the legislature's intent to create a harmonious statutory scheme, but it would also frustrate the stated intent of the legislature to close the loophole that allowed prisoners serving aggregate sentences of three years or more to avail themselves of both sentence review CT Page 3203 under 51-195 and sentence reduction under 53a-39. Our courts have "traditionally eschewed construction of statutory language that . . . thwarts its manifest purpose . . ." Sutton v. Lopes, 201 Conn. 115,121, 513 A.2d 139, cert. denied sub nom. McCarthy v. Lopes,479 U.S. 964, 107 S.Ct. 466, 93 L.Ed.2d 410 (1986). Penal statutes, as the petitioner argues, are to be strictly construed against the state;State v. Hufford, 205 Conn. 386, 392, 533 A.2d 866 (1987); but "words used in a criminal statute should not be accorded the narrowest technical meaning in disregard of their context and in frustration of the obvious legislative intent . . ." Id. (Footnotes omitted. Emphasis added.) State v. Lombardo, 19 Conn. App. 631,634-37 (1989).
Although neither our statutes nor rules define what is meant by a "definite sentence," it is apparent that the concept implies a fixed or determinate period of incarceration as distinguished from "indeterminate sentencing," characterized by such sentences as "not less than five nor more than ten years," which concept was abolished during the early 1980's. In State v. Gordon, 197 Conn. 413, 428 (1985), for example our Supreme Court noted that "[o]nce a definite sentence is imposed, a defendant must serve the full amount of the sentence. Unlike indeterminate sentences, there is no discretion in the parole board to order early release from a definite sentence." Since Gordon. indeterminate sentencing was abolished in Connecticut and, indeed, throughout the United States, and replaced by determinate sentencing. Parole was also abolished but later reinstated and made applicable to determinate sentencing.[7] The implication of the Supreme Court's discussion of definite sentences in Gordon, however, remains the same, namely that the term "definite" refers to a term of confinement which must be served in its entirety, less any reductions specifically provided for by statute.[8]
Moreover, even though "definite" is not defined in our statutes or rules, common dictionary definitions of this term support the conclusion that as applied to sentencing, the term refers to the executed and not the suspended portion of the sentence. The RandomHouse Dictionary of the English Language defines "definite" as: "clearly defined or determined; not vague or general; fixed; precise; secure . . . having fixed limits; bounded with precision." That portion of a sentence under our law that is definite is the executed portion. Other than statutorily authorized deductions for good behavior, extra meritorious conduct, and provisions for eligibility for parole, it is the only portion of the sentence that is fixed or bounded with precision. The unexecuted portion of the sentence, i.e. the "thirteen years" of a sentence of "thirteen CT Page 3204 years suspended after two and one half years" is not fixed or bounded with precision. Neither the thirteen years, nor for that matter any portion of the sentence in excess of two and one half years, is even subject to be considered for execution until and unless the defendant, having completed serving the executed portion of the sentence, including any period of parole, and having been thereafter placed on probation, then violates the terms of her probation, is arrested on the charge of violating probation and, after hearing before a judge, is found, by a fair preponderance of the evidence, to be in violation of probation. State v. Davis,229 Conn. 285 (1994). Even then, the court has the option of executing all, some or none of the previously suspended sentence, and it may simply continue the defendant on probation. See Gen. Stats. Sec.53a-32 (b). Under such circumstances, it can hardly be claimed that there is anything "definite" about the suspended portion of a "split sentence" such as the one imposed in this case.
In short, even though eligibility for sentence modification is correctly based on the "total effective sentence," and even though the total effective sentence in this case is thirteen years, suspended after two and one halfyears, the definite portion of that total effective sentence is two and one half years, rendering the defendant eligible to seek a modification of that portion of her sentence.[9]
Additionally, it is worth noting that it is a matter of common sense that the only portion of a sentence that the vast majority of convicted defendants seek to have reviewed or modified is the incarcerative portion. Few defendants have any interest in reducing the suspended portion of a sentence, and there are alternative mechanisms, found in General Statutes Sec. 53a-30 and 55, respectively, for seeking modification of the terms and conditions of probation or an early termination of probation altogether.
Finally, it should be reemphasized that the approach suggested by the state would result in a large category of cases being made exempt from any sort of judicial review, a result that is inconsistent with the harmonious application of the sentence modification and sentence review statutes. Moreover, the state's approach would enable any judge who wished to insulate his or her sentence from the possibility of subsequent reduction to do so by the simple expedient of imposing a split sentence with a suspended portion in excess of three years and an executed portion of less than three years. Given the legislature's manifest interest in assuring some opportunity for review of all sentences of incarceration, it could not possibly have CT Page 3205 intended such a result.
In light of the facts that 1) sentences involving imprisonment where the term of confinement is three years or more are eligible for sentence review; 2) the legislature intended a harmonious system to allow judicial oversight over sentences after the courts would otherwise have lost jurisdiction; 3) sentence modification was intended to be available for those sentences of confinement that are not statutorily eligible for sentence review; and 4) the "definite sentence" eligible for sentence modification is the executed portion of a total effective sentence that includes a term of years suspended after the execution of a lesser period of incarceration of three years or less, this court concludes that the portion of the sentence that triggers eligibility for sentence modification is the term for which the defendant is actually to be confined.
Having concluded that this defendant's sentence is eligible for sentence modification consideration, the court next turns to the merits of the defendant's motion.
At the hearing on the instant motion, which was held in New Haven on May 29, 1997, the court again received oral presentations from the Assistant State's Attorney who prosecuted the case, along with Charles Rice, Sr. and two of his sons, as well as Jane Engelke, the representative of Mothers against Drunk Driving. The court also reviewed documentation concerning the defendant's treatment for alcoholism, depression and post-traumatic stress disorder, and it heard from the defendant's present attorney and the alternative sentencing planner who had assisted her at the initial sentencing. Most significantly, the defendant herself addressed the court, after having first turned to face the Rice family to express responsibility for and grief over, Mrs. Rice's death and Mr. Rice's injuries. It appeared to this court that the defendant's acceptance of responsibility was genuine and that her expression of grief was heartfelt.
These belated but nonetheless welcome expressions of responsibility and grief do not in and of themselves, entitle the defendant to release from incarceration. They are, however, among the many kinds of issues that a court needs to balance when imposing a sentence as well as when considering a subsequent modification of that sentence. It is plain, on the one hand, that although the defendant has made considerable progress in dealing with the related but not identical issues of guilt and responsibility, she still has quite some distance to go before this court would feel comfortable enough to authorize her CT Page 3206 immediate release. Moreover, beyond these defendant-oriented issues, there remain the facts that the defendant killed one person, injured another, and tore the heart from an entire family, and the retributive purposes of sentencing under such circumstances simply cannot be ignored.
On the other hand, because she has responded to the court's challenge and invitation and has made significant progress in addressing her substance abuse and mental health issues, and because she has now accepted responsibility for her own conduct, the defendant has earned the opportunity to be considered for some reduction in her sentence. Because, however, she has so much work yet to accomplish, the precise timing of her release is something that should be left to those who have the opportunity to observe and monitor her behavior on a daily basis and not just for one hour in a public courtroom.
For this reason, the court reduces the sentence on the manslaughter count to ten years, suspended after two years, with five years of probation under the same conditions as originally imposed.[10] The sentence on the assault charge remains as it was, so that the total effective sentence will be thirteen years suspended after two years, plus five years probation. With such a sentence, the court anticipates that the Commissioner of Correction will use his discretion wisely in determining when, or if, the defendant should be considered for a transitional release program administered by his Department.[11]
SILBERT, J.